UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 10117 DPW

2004 JAN 16 P 2: 15

U.S. DISTRICT COURT
DISTRICT OF MASS.

MAGISTRATE JUDGE Cohen

| | |
|---|---|
| **KOFI ASIMPI** ) | |
| PLAINTIFF ) | |
| ) | DOCKET NO. |
| v ) | |
| ) | |
| **RELIEF RESOURCES, INC.** ) | |
| DEFENDANT ) | |

## COMPLAINT

### Parties

1. The Plaintiff, Kofi Asimpi, is a resident of Allston, Suffolk County, Massachusetts, and a citizen of the United States. The Plaintiff is a former employee of the Defendant

2. The Defendant, Relief Resources, Inc., is a human services organization with offices located in the Western Division and in Suffolk County, Massachusetts.

### Jurisdiction

3. This court has jurisdiction over the case pursuant to Title VII of the United States Civil Rights Act of 1964.

4.  The Plaintiff was employed by the Defendant effective April 02, 1997, to the Spring of 1998. The Plaintiff's final day of work for the Defendant was Saturday, March 14, 1998. The Defendant received from Catherine Harper of the Center for Mental Health a faxed copy of letter dated March 1, 1998, written by the Plaintiff and addressed to Ray Castagnola, Manager of the Adam's Street facility operated by the Center for Mental Health. The letter addressed the Plaintiff's concerns about his work environment at the Center for Mental Health. The person about whom the Plaintiff complained in his letter was a resident of the Adam's Street facility. The resident's diagnosis was schizophrenic affective disorder.

5.  The Plaintiff alleged that based upon his complaint of being racially-harassed at the Center for Mental Health, the Defendant retaliated by summarily terminating him in violation of Title VII of the Civil Rights Act of 1964 and of M.G.L. c. 151B. The Defendant denied that the Plaintiff's inactivation was due to the complaint of racial harassment but rather the result of his failure to contact his employer for one month. The Defendant also alleged that based upon the Plaintiff's work performance, it would have been justified to terminate him.

6.  The Defendant's argument that the Plaintiff was placed on inactive status because he failed to contact his employer for a month was false. The Plaintiff was in contact with his employer on numerous occasions during the time period of March 1998 to May 1998. The Plaintiff was repeatedly told that someone from the Defendant's office would return his calls. The Defendant in its Position Statement did admit that Plaintiff had "expressed his desire to work as much as

possible." This fact remained the same; only the Defendant's acknowledgment of this fact changed.

7. The Defendant relied upon its assertion that "Mr. Asimpi was placed on inactive status due solely and exclusively to his failure to contact his employer for a period of one month." From its own telephone records, however, it was clear that the Plaintiff was in constant contact with the Defendant, including the following dates: 3/19/98, 3/22/98, 4/3/98 and 5/3/98.

8. If the Defendant truly did not terminate the Plaintiff as it claimed and still considered the Plaintiff as an employee, it would have followed its own laid down procedure regarding inactivation by writing to him. The Defendant's *Policies and Procedures* (page 14) states: "Field Staff who do not maintain contact with us and/or who do not accept and/or complete assignments on a consistent basis will be notified by mail of inactivation." That the Defendant failed to do this also proved that its claim that it placed the Plaintiff only on inactive status and did not terminate him was false.

9. While the Defendant claimed that the sole reason for the Plaintiff's inactivation was his failure to maintain contact with the Defendant, the Defendant also saw fit to throw in some character assassination to bolster its position. The fact that the Plaintiff never knew of his alleged "poor work performance" until he read the Defendant's Position Statement would lead one to conclude that it never existed. The fact that the Defendant continued to employ the Plaintiff would indicate that the alleged "poor work performance" was a fabrication. The

Plaintiff disputed the allegation that he was banned from "approximately seven agencies".

10. It was obvious that the Defendant fabricated these "poor work performance" allegations in its "Work History" only in preparation for legal action. This document was not included in the Defendant's personnel file and contained only remarks detrimental to the Plaintiff. Thus the Defendant's statement, "Enclosed is a complete copy of the contents of your personnel file, forwarded to you per your request" in response to the Plaintiff's letter requesting a copy of the contents of his personnel file was false. The Defendant made this statement in its letter of July 2, 1998, addressed to the Plaintiff. In addition, while this "Work History" purported to be a contemporaneous log of the Defendant's hours and locations, it was written in past tense. For example, the very last entry on the "Work History" document read, "No contact so his file was inactivated." Indeed, the Defendant's president, Douglas Hammond, admitted under oath that the "Work History" was compiled in preparation for this case.

11. While the Defendant claimed that the Plaintiff was placed on inactive status and not terminated, the result was the same. The Defendant's letter of 5/29/98 referred to the Plaintiff as "a former employee". The Plaintiff was no longer an employee of the Defendant.

12. The Defendant's intention was clear. The Plaintiff complained of being racially harassed. Within a couple of days, the Defendant began refusing to return the Plaintiff's telephone calls and giving him assignments. Within a month and a half, the Defendant placed the Plaintiff on official, inactive status.

13. WHEREFORE, the Plaintiff demands judgment against the defendant for damages in the amount of $75,000.00 (seventy-five thousand dollars) and such other relief as this Court deems just

*[signature]*
Kofi Asimpi
213 Kelton Street, #G-02
Allston, MA 02134-4384

Tel.: # 617-566-2524