UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOFI ASIMPI<br>    PLAINTIFF<br><br>v<br><br>RELIEF RESOURCES, INC.<br>    DEFENDANT | DOCKET NO.: 04-10117-DPW |

### SETTLEMENT PROPOSAL

**Parties**

1. The Plaintiff, Kofi Asimpi, is a resident of Allston, Suffolk County, Massachusetts, and a citizen of the United States. The Plaintiff is a former employee of the Defendant.

2. The Defendant, Relief Resources, Inc., is a human services organization located in the Western Division of Massachusetts.

3. The Plaintiff was employed by the Defendant effective April 02, 1997, to the Spring of 1998. The Plaintiff's final day of work for the Defendant was Saturday, March 14, 1998 (Exhibit 1). The Defendant received from Catherine Harper of The Center for Mental Health a faxed copy of personal letter dated March 1, 1998, written by the Plaintiff and addressed to Ray Castagnola, Manager of the Adam's Street facility operated by The Center for Mental Health. The letter addressed the Plaintiff's concerns about his personal safety at The Center for Mental Health. The person about whom the Plaintiff complained in his letter was a resident of the Adam's Street facility. The resident's diagnosis was schizophrenic affective disorder.

3.  The Plaintiff alleged that in Autumn 1997, one of the clients of the Center for Mental Health (the agency with which Defendant contracts to provide field staff) began verbally and physically abusing the Plaintiff. Plaintiff orally advised his supervisors of the incidents and pleaded with his House Manager of Adams Street, Waltham, to intervene. The Plaintiff had earlier been falsely accused by a female resident of Adams Street and he reported it to his Manager. Once the Manager intervened and the female resident got to know the truth about him, she stopped being negative towards the Plaintiff and the relationship between the two automatically changed for the better. The Plaintiff thus several times requested the Manager to similarly intervene between the male resident and the Plaintiff to bring an understanding between them. The Manager took no action; he only promised he would, each time the Plaintiff made a report of harassment and abuse by the male resident to him. Meanwhile, the male resident continued to harass and threaten the Plaintiff.

4.  On or March 1, 1998, the Plaintiff sent a letter to the House Manager who oversaw the site where the abusive client resided and the Plaintiff was assigned (Exbit 1). This letter detailed some of the abuse and requested that action be taken because the Plaintiff feared for his personal safety. The Defendant received a faxed copy of the letter. The next day, March 14, 1998, was the Plaintiff's last work assignment with the Defendant. The Defendant claimed that due to the Plaintiff's "lack of contact" with their office to request assignment, his name was placed on "inactive" status.

5   Plaintiff merely sent a letter to the House Manager reflecting his concerns over the harassment and abuse he was receiving at the site he was assigned to work. When this letter reached the Defendant, his employer, the Plaintiff was summarily terminated the very next day. This is a clear example of retaliatory termination. No investigation of the Plaintiff's complaint of abuse in the workplace was ever conducted. The Plaintiff was simply terminated.

6.  The Defendant claimed in their Position Statement of 10/30/98 that "Mr. Asimpi was placed on inactive status due **solely and exclusively to his failure to contact his employer for a period of one month**" (Exibit 2, p. 3, emphasis added). The Plaintiff claims that he was in contact with the Defendant throughout the alleged "failure to contact" time period and that his calls were not returned.

7.  In fact, the Cambridge office of the Defendant contacted the Plaintiff on 04/15/98 asking the Plaintiff to conduct an orientation for newly employed field staff. The Plaintiff agreed and was told that details would be forthcoming. Details never came and repeated calls to the Cambridge office went unreturned. The Defendant added a character assassination claim by stating that it would have been justified in terminating the Plaintiff because of his "poor work performance." Yet the Defendant's branch office offered this allegedly "poor" employee a job to train new field staff during the period the Plaintiff was allegedly not in contact with them. Obviously, the Defendant's claims that the Plaintiff performed poorly is a pretext solely for the purposes of opposing this action.

8.  It was not until at a very late stage, i.e., the last Public Hearing in March 2002 at the offices of the Massachusetts Commission Against Discrimination (MCAD) and after the Plaintiff had filed the current complaint with the United States District Court in Boston that the Defendant strangely "discovered" other reasons and/or have made strenuous efforts to change their position as to why the Plaintiff's name was placed on "inactive" status. The belated reasons the Defendant offered included: (1) that "[u]pon further investigation the Defendant learned that due to the plaintiff having been barred from several placement sites, [2] his desire not to be assigned to other sites, and [3] his lack of private transportation caused the defendant to be able to place the plaintiff?" (4) that "the defendant, in good faith believed that the plaintiff had

not contacted the defendant but that belief was erroneous." The Defendant never mentioned any of these reasons in their Position Statement and maintained all along that the sole reason the Plaintiff's name was placed on "inactive" status was his failure to contact the Defendant for assignment. The Defendant introduced these false reasons only later and only after their blatant lie of the Plaintiff's failure to contact them had been exposed. Yet strangely enough, the Hearing Officer (HO), apart from blatantly fabricating her own version of events or distorting parts of the Plaintiff and the Defendant's testimonies to make it plausible for her to give the decision she gave, also strangely admitted them into evidence and partly based her negative decision against the Plaintiff on them.

9. The Defendant claimed that "Mr. Asimpi was placed on inactive status on April 22, 1998 in **accordance with relief resources standard procedure** because he had failed to contact his employer for a period of one month." According to the Defendant's employee handbook "**Field Staff who do not maintain contact with us and/or who do not accept and/or complete assignments on a consistent basis will be notified by mail of inactivation.**" (Exihit 3, emphasis added). Plaintiff requested and received a letter dated 05/29/98 reflecting his "inactive" status as of 04/22/98 (Exibit 4). The Defendant failed to follow their own stated procedures by not sending to the Plaintiff an inactivation letter until a month later and only after requested by Plaintiff. No other "inactivation" letter was in the Defendant's personnel file as received by both the Plaintiff and his former counsel.

10. A comparison of dates shows that in fact (by the Defendant's own admission), the Plaintiff was in contact with the Defendant during the time period the Defendant claimed he was not. The Defendant's "Answers to Interrogatories from the Plaintiff" shows that the Plaintiff called the Defendant many times, including on the following dates: 03/22/98, 03/27/98, 03/31/98, 04/02/98 and 04/03/98.

11. Additionally, a letter dated 03/31/98 from the Defendant refers to the Plaintiff as "current employee". (Exbit 6). All the while, the Defendant claimed that the Plaintiff's name was "solely and exclusively" placed on inactive status because of his failure to contact the Defendant during the period of 03/22/98 to 04/22/98.

12. Under the laws of Massachusetts and the United States, retaliation for resisting and complaining of harassment in the workplace is unlawful. The Defendant, rather than take action to investigate and combat the workplace harassment, found it simpler and more convenient to summarily terminate the Plaintiff.

13. After the Plaintiff had filed a complaint with the MACD, the Defendant answered by stating that the **only** reason the Plaintiff was terminated was due to his failure to maintain contact with them for a one month period. It was only belatedly that the Defendant "discovered" other reasons for the Plaintiff's termination. Then, in accordance with the practices of defending against an employment harassment, the Defendant claimed the Plaintiff was a bad employee. So bad, in fact, that they initially offered him a position to conduct orientation and training of newly recruited field staff during the alleged period of no contact! Additionally, during the period the Plaintiff was allegedly a "poor worker", the Defendant not only saw fit to increase the Plaintiff's weekly work hours to more than 60 sometimes, but also gave him pay increment at least two times.

14. The Plaintiff holds two doctorate degrees, a D.Min. in Theology from Southern Methodist University and a Ph.D. in History from Boston University. Obviously, the Plaintiff, who is also an ordained Presbyterian Minister of Religion, was not working in this capacity merely for the $7.50 an hour. He has a genuine concern for those he

serves and to be slandered with the "poor work performance" defense adds insult to injury.

15. It is clear from the evidence in this case that the belated reasons the Defendant has given in their defense are mere pretexts to cover up their own failure and refusal to act to combat workplace harassment. The laws on the matter show the employer's responsibility to address harassment in the workplace. The law does not give the employer the right to retaliate by terminating employees because they draw attention to these issues.

WHEREFORE, the Plaintiff proposes that he is willing to amicably settle this matter out of court with the Defendant and to reduce his damages in the amount of $75,000.00 (seventy-five thousand dollars) to $55,000.00 (fifty-five thousand dollars), provided the Defendant will admit honorably to all their fabrications and distortions against the Plaintiff, designed purposely to tarnish his good image in order to win the case against the Plaintiff.

Dated at Allston, Massachusetts, this 2nd Day of September, 2004.

Kofi Asimpi
213 Kelton Street. #G-02
Allston, MA 02134-4384

Tel.: # 617-566-2524

### Certificate of Service

This will certify that the foregoing document was served on counsel of record by regular mail on