```
               UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MASSACHUSETTS

                                       C.A. No. 04-10117-DPW


                       KOFI ASIMPI,
                         Plaintiff

                            v.

                    RELIEF RESOURCES, INC.,
                         Defendant
```

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now comes the defendant, RELIEF RESOURCES, INC., and hereby submits that the following memorandum in support of its motion for summary judgment:

**I.  THE PLAINTIFF CANNOT SUSTAIN HIS BURDEN OF PROVING A PRIMA FACIE CASE OF RETALIATION.**

The complaint in this action asserts a cause of action for retaliatory discharge of the plaintiff from his position as a member of the defendant's Field Staff, in violation of Title VII of the Civil Rights Act of 1964.[1]  42 U.S.C. 2000e, *et seq*.  The First Circuit has laid out the analytical framework applicable to retaliation claims as follows:

> Where, as in this case and in retaliation cases generally, there is no direct evidence of the defendant's retaliatory animus, the McDonnell Douglas burden-shifting framework is

---

[1]  The plaintiff has not asserted a claim.  Inasmuch as the Massachusetts Commission Against Discrimination found no violation and the plaintiff did not appeal that decision, no de novo claim lies under the cognate state anti-discrimination law, M.G.L. c. 151B,§ 4. Therefore, this action is limited to Title VII.

>   used to allocate and order the burdens of producing evidence. ... To establish a prima facie case of retaliation, Fennell must show that: (1) she engaged in protected conduct under Title VII ...; (2) she suffered an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action.

*Fennell v. First Step Designs, Inc.,* 83 F.3d 526, 535 (1996) (citations omitted).

For the reasons that follow, the defendant submits that the plaintiff at bar cannot prove any of the three elements of the prima facie case.

**A. THE PLAINTIFF DID NOT ENGAGE IN PROTECTED CONDUCT UNDER TITLE VII.**

Title VII expressly requires that the practice opposed be one "made an unlawful employment practice by this subchapter...." 42 U.S.C. 2000e-3. In order to sustain his burden of proving that he engaged in protected conduct, the plaintiff must show by a preponderance of the evidence that he "reasonably believed" that the conduct about which he complained violated Title VII. *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 855 (1st Cir. 1998). The question is both objective and subjective, requiring not only that the plaintiff subjectively believe that the conduct he opposed may be violative of Title VII, but also that a reasonable person would conclude that the allegations state a possible claim under Title VII. See *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993). Where no one could reasonable person would believe that the facts set forth by the plaintiff do

-2-

state a plausible violation of Title VII, the opposition does not constitute protected conduct on which a claim of retaliation can be based.  *Clark County School District v. Breeden,* 532 U.S. 268, 271 (2001)(per curiam).

The only allegedly protected conduct on which the plaintiff bases his claim of retaliation is the letter he sent to Ray Castagnola on March 1, 1998 ("the Castagnola letter").  See Exhibit 1, attached to Affidavit of Douglas Hammond.  The defendant submits that the alleged harassment detailed in that letter does not state a colorable cause of action under Title VII, and, as a matter of law, it does not state a basis for a reasonable (as opposed to a subjective) belief that the plaintiff was opposing actionable racial harassment.

> **1.  THE ALLEGATIONS OF THE CASTAGNOLA LETTER ARE NOT SUFFICIENTLY SEVERE AND PERVASIVE SO AS TO FORM AN ADEQUATE BASIS FOR A REASONABLE BELIEF THAT HE WAS BEING SUBJECTED TO RACIAL HARASSMENT IN VIOLATION OF TITLE VII.**

In *Clark County School District v. Breeden*, 532 U.S. 268, 270-71 (2001)(per curiam), the Court reiterated that workplace harassment must be quite extreme and unbearable before rising to the level of a Title VII violation.

> Title VII forbids actions taken on the basis of sex that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U. S. C. §2000e-2(a)(1). Just three Terms ago, we reiterated, what was plain from our previous decisions, that sexual harassment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an

abusive working environment.' " *Faragher v. Boca Raton*, 524 U. S. 775, 786 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U. S. 57, 67 (1986) (some internal quotation marks omitted)). *See also Burlington Industries, Inc. v. Ellerth*, 524 U. S. 742, 752 (1998) (Only harassing conduct that is "severe or pervasive" can produce a "constructive alteratio[n] in the terms or conditions of employment"); *Oncale v. Sundowner Offshore Services, Inc.*, 523 U. S. 75, 81 (1998) (Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment"). Workplace conduct is not measured in isolation; instead, "whether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Faragher* v. Boca Raton, supra, at 787-788 (quoting *Harris v. Forklift Systems, Inc.*, 510 U. S. 17, 23 (1993)). Hence, "[a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. Boca Raton, supra*, at 788 (citation and quotation marks omitted).[2]

In the Castagnola letter, the plaintiff details certain insulting and abusive comments directed toward him by "Steve," a resident of a community residence for mentally ill adults.[3] When

---

[2] While *Breeden* relates to unlawful discrimination on the basis of sex, the Supreme Court has drawn upon earlier race discrimination cases in recognizing hostile environment claims as cognizable sex discrimination under Title VII. Faragher, supra, 524 U.S. at 775 & n. 1. *See also National Railroad Passengers Corp. v. Morgan,* 536 U.S. 101, 116 n. 10 (2002)

[3] Fairly read, the plaintiff's complaints with regard to "Steve" were as follows:

- insulting and disrespectful comments such as "you don't change your clothes," "you eat other people's food," and "you're not intelligent";
- an unspecified "physical assault";
- mocking the fact that the plaintiff is a minister;
- falsely stating that there were no rolls in the bathrooms when, in fact, the bathrooms had rolls;
- changing the channel when the plaintiff was watching television;
- blocking the plaintiff's view of the television;

measured against the threshold set forth by the Supreme Court for stating a cause of action based upon a hostile workplace environment, it is abundantly clear that the interactions between the plaintiff and Steve, while unpleasant and unfortunate, are not sufficiently onerous for a reasonable person to believe that the plaintiff was being subjected to racial harassment actionable under Title.

Again, "[w]orkplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances..." *Breeden, supra,* 532 U.S. at 270. In this case, it is necessary to consider the circumstances of the plaintiff's workplace – a community residence for mentally ill adults - in order to place the allegations of the Castagnola in context. The plaintiff admits that Steve was severely mentally ill, having been clinically diagnosed with schizophrenic affective disorder. Obviously, Steve was a resident of this facility because of his inability to conform his conduct to the requirements of social norms. Steve's mental illness caused him to say things that were irrational and without a basis in reality. The plaintiff is clearly not "unintelligent," and the defendant would stipulate that he changes his clothes and eats his own food. As with any

---

- rudely yelling to the plaintiff to close the door to the smoking room;
- interrupting plaintiff while making personal telephone calls and pulling the phone plug

mental health worker, the ordinary terms and conditions of the job include dealing with people who say rude, unpleasant and irrational things.

In these circumstances, Steve's comments do not reasonably state a colorable claim to a violation of Title VII.  *See Breeden, supra,* 532 U.S. at 271 (no Title VII violation where the ordinary terms and conditions of respondent's job required her to review the sexually explicit statement in the course of screening job applicants).  By accepting employment as a caretaker for the mentally ill, the plaintiff implicitly accepted a workplace in which a certain level of abuse is to be anticipated and tolerated.  To hold otherwise would broaden the intended scope of Title VII to a point well beyond its intended reach, thereby exposing employers in service areas such as mental health services to extraordinary liability given the propensity of the consumers of those services to be abusive.

In urging this Court to find that Steve's conduct did not rise to the level of a cognizable Title VII violation, and that the Castagnola letter cannot be deemed to be protected opposition to a Title VII violation, the defendant is not suggesting that this Court hold that the abusive conduct of a mentally ill person toward a mental health worker can never be actionable.  Rather, the defendant's position is that that threshold simply has not been met in the case at bar.  The decision in *Crist v. Focus*

*Homes, Inc.*, 122 F.3d 1107 (8th Cir. 1997), illustrates this point.  There, J.L., a mentally retarded 16 year old who stood over six feet tall and weighed in excess of two hundred pounds, repeatedly acted in a violent and sexual way with the plaintiffs, to an extent that no reasonable person could be expected to endure, even given the mental health setting of the workplace.  Specifically, J.L. grabbed the plaintiffs' breasts, buttocks and genitals on numerous occasions, repeatedly attempted to pull off their clothes, rubbed his erect penis against one of the plaintiffs, and knocked a plaintiff unconscious.  122 F.3d at 1108-09.[4]  Clearly, the facts upon which the Eighth Circuit found a triable issue emanating from J.L.'s pervasive violent and sexually charged conduct are to be distinguished from the incivility displayed by Steve toward the plaintiff. *See also, Ligenza v. Genesis Health Ventures of Mass., Inc.,* 995 F.Supp. 226 (D.Mass. 1998)(although, under limited circumstances, an employer can be held liable for sexually charged actions of non-employee, summary judgment enters for defendant).[5]

---

[4] Notably, even on these facts the Eighth Circuit finding triable issues were present did not rest on J.L.'s egregious conduct, but on the employer's failure to act in a timely and appropriate manner. 122 F.3d at 1112.  See also, infra, § I (A)(3) of this Argument.

[5] The *Ligenza* case arose out of a bedridden patient looking up the blouse of a respiratory therapist.  Although the employer had notice of the patient's propensity for making inappropriate sexual remarks to female employees, in entering summary judgment the court relied on the fact that the plaintiff did not complain about the existence of an allegedly hostile environment.  995 F.Supp. at 231.

The plaintiff has the burden of proving that the alleged opposition was to conduct in the workplace that not only he reasonably believed, but that a reasonable person would conclude rose to the level of onerous and pervasive racial harassment. The allegations contained in the Castagnola letter fall far short of that mark.

### 2. THERE IS NO EVIDENCE THAT STEVE'S COMMENTS WERE RACIALLY MOTIVATED.

The comments made by Steve were rude and insulting. They did not, however, touch in any way on the plaintiff's race. The plaintiff's quantum leap from being spoken to rudely to being racially harassed is unsupported by the record.

Surely, Steve evinced his dislike for the plaintiff in no uncertain terms, and the plaintiff acknowledged as much in the Castagnola letter. But the insults directed at the plaintiff were general in nature and not race-related. As the First Circuit pointed out in the context of a claim of discrimination on the basis of sexual orientation:

> The record makes manifest that the appellant toiled in a wretchedly hostile environment. That is not enough, however, to make his employer liable under Title VII: no claim lies unless the employee presents a plausible legal theory, backed by significantly probative evidence, to show, inter alia, that the hostile environment subsisted "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). If the appellant did not frame a trialworthy issue as to this essential element of his claim, Fed. R. Civ. P. 56(c) authorized the entry of summary judgment.

Where is the plaintiff's "significantly probative evidence" that Steve's comments and conduct were race based? The words used by Steve were not overtly racial. While the plaintiff refers to the fact that none of the other staff were treated by Steve in the way he was treated, the plaintiff admits that were other African or African American workers at this site, but there is no evidence that any of them were harassed by Steve. Were Steve inclined to act rudely to black people, thereby evincing racial animus, one would expect his wrath to be directed at other black workers at the facility. The lack of evidence of any hostility to other black workers undermines any such allegation of disparate treatment.

Title VII proscribes harassment based upon race or other protected classes of workers. While racially derogatory language may be probative as to whether the workplace environment is racially hostile, *Allder v. Daniel O'Connell's Sons,* 20 F.Supp.2d 210, 216 (D.Mass. 1998), simple derogatory comments, like those leveled at the plaintiff by Steve, carry no probative weight on the issue of racial hostility. Title VII does not speak to mere insults not tinged with racism or to any level of harassment that is not based upon the worker's membership in a protected class. To deem the allegations of the Castagnola letter sufficient for a reasonable belief that Title VII was being violated would

transform Title VII into a "general civility code," which it was not meant to be. *See Faragher, supra,* 524 U.S. at 774-75.

The plaintiff has the burden of proving that Steve's disdain for him was racially motivated, not simply interpersonal. On the record before this Court, the plaintiff has not satisfied that burden. On this record, the plaintiff cannot show that a reasonable person would believe that Steve's harassment was racially motivated and summary judgment is appropriate.

### 3. THE FAILURE OF THE PLAINTIFF TO GIVE THE DEFENDANT NOTICE OF THE ALLEGED RACIAL HARASSMENT PRECLUDES A FINDING THAT A TITLE VII VIOLATION WAS OCCURRING.

Generally, in order to prove protected opposition, "the opposition must be directed at an unlawful employment practice of the employer, not an act of discrimination by a private individual." *Silver v. KCA, Inc.,* 586 F.2d 138, 141 (9th Cir. 1978). There is, however, an exception carved out of the rule so as to impose Title VII liability on an employer for non-employee harassment only "where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct." *Folkerson v. Circus Circus Enterprises, Inc.,* 107 F.3d 754, 756 (9th Cir. 1997). *See also*, *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073-74 (10th Cir. 1998); *Powell v. Las Vegas Hilton Corp.*, 841 F.Supp. 1024, 1028 (D.Nev. 1992).

In a case such as this, where the employee alleges a racially hostile work environment,:

> the employer is liable only for negligence: that is, only if the employer knew, or in the exercise of reasonable care should have known, about the harassment and failed to take remedial action. *See, e.g., Dennis v. Cty. of Fairfax*, 55 F. 3d 151, 153 (CA4 1995); *Davis v. Monsanto Chemical Co.*, 858 F. 2d 345, 349 (CA6 1988), cert. denied, 490 U. S. 1110 (1989). Liability has thus been imposed only if the employer is blameworthy in some way.

*Burlington Industries, Inc., Petitioner v. Ellerth,* 524 U.S. 742 (2002)(Thomas, J., dissenting).

The undisputed fact is that the plaintiff never gave any notice to the defendant regarding the alleged racial harassment by Steve. That being the case, the defendant could not have ratified or acquiesced in Steve's conduct, it could not be deemed to have failed to take corrective actions on a timely basis, and it cannot be found negligent or blameworthy in any way. Therefore, no liability could attach to the defendant, and the Castagnola letter cannot be deemed to be in opposition to any plausible Title VII violation.

### B. THE PLAINTIFF CANNOT SUSTAIN HIS BURDEN OF PROVING A CAUSAL CONNECTION BETWEEN ANY PROTECTED ACTIVITY AND HIS INACTIVATION AS AN EMPLOYEE OF THE DEFENDANT.

In order to prove a prima facie case, the plaintiff has the further burden of showing that his inactivation by the defendant was causally related to the Castagnola letter. This burden he cannot meet.

The plaintiff's inactivation was administrative in nature, having nothing to do with any attempt to oppose alleged unlawful discrimination in the Castagnola letter.  The plaintiff's policy was to inactivate all field staff who had not been assigned a placement for a period of thirty days.  The plaintiff's last shift was on March 14th and he was reclassified to inactive on April 22nd, a period of approximately five weeks.  The defendant was one of a number of employees reclassified at that time.  Given the nature of the temporary employment industry, where numerous employees come and go over the course of a year, reclassification is done once a month in batches.  The plaintiff was reclassified to inactive during the late April 1998 purge.  His status was not individually considered, other than his not having been assigned a shift for a thirty-day period.

Moreover, the failure to assign the plaintiff to shifts was not due to any retaliatory animus.  The undisputed fact is that the plaintiff had been banned from several sites due to poor performance,[6] and he had requested not to be sent to other sites

---

[6]  The plaintiff suggests in his Motion for Summary Judgment that the defendant fabricated the allegations of poor work performance.  Yet, the deposition of the defendant reveals that he was aware of these allegations as to several of the sites.  Specifically, the plaintiff admits being aware of the following:

- a complaint of sleeping on the job at a facility known as River Street. Deposition of Asimpi at p. 38, ln. 5 through p. 39, ln 18;
- banned from River Street facility on complaint for improper telephone use and failure to be with a client.  Dep. at p. 43, ln 5 through p. 44, ln 15;
- banned from facility known as 808 Memorial Drive after improper response to scheduling mix-up.  Dep. at p. 49, ln 13 through p. 51, ln 22 and p. 52, ln 22 through p. 53, ln 7;
- complaint of sleeping on the job at facility known as the League

for various other reasons.[7]  At the time, the plaintiff depended on public transportation.  Given these limitations, the defendant was unable to find any sites to which the plaintiff could be assigned.

The defendant acknowledges that in its initial filing with the MCAD, filed shortly after the complaint was filed with that agency and before any in depth investigation or discovery was conducted, the defendant erroneously misstated the administrative basis for the plaintiff's inactivation, alleging that his status was changed due to his failure to contact the defendant for a period of thirty days.  The plaintiff clearly had contacted the defendant (and the defendant had contacted the plaintiff) in the period between the March 13, 1998, receipt of the Castagnola letter and the plaintiff's inactivation in late April.  Once the defendant had the opportunity to investigate this matter in more depth, the proper administrative basis was discovered and

---

        School.  Dep. at p. 54, ln 2 through ln 14;
- complaint of medication error at facility known as Clement Street. Dep. at p. 60, ln 15 through p. 61, ln 11;
- banned from Clement Street after second medication error. Dep. at p. 63, ln 6 through p. 64, ln 4;
- banned from facility known as Norfolk Street after heated discussion with house manager.  Dep. at p. 64, ln 5 through p. 65, ln 21.

[7] The plaintiff asked not to be sent back to three facilities: The Evergreen Center (Dep. at p. 41, ln 6 through p. 43, ln 4); St. Germain School (Dep. at p. 47, ln 9 through p. 49, ln 12, and; Margarite Terrace (Dep. at p. 67, ln 5 through ln 23.

articulated.  See Respondent's Answers to Interrogatories from the Complainant, Int. 13.[8]

The plaintiff's repeated assertion that the defendant's initial response was false does not meet his burden under the tripartite burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The defendant has articulated a valid, non-discriminatory reason for not assigning the plaintiff to a shift and for placing him in inactive status. "To avoid summary judgment, the plaintiff must 'elucidate specific facts which would enable a jury to find the reason given [by the employer] was not only a sham, but a sham intended to cover up the employer's real motive: [retaliatory] discrimination.'" *Thomas v. Sears Roebuck*, 144 F.3d 31, 33 (1st Cir. 1998) quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir. 1990). The plaintiff has not, and cannot, proffer any direct evidence of discriminatory animus.

The plaintiff relies on the temporal proximity between the receipt of the Castagnola letter on March 13, 1998, and his inactivation six weeks later.  As the First Circuit has recently pointed out:

> The Supreme Court has stated that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as

---

[8] The interrogatories answered in the MCAD proceeding were attached to the Plaintiff's Motion for Summary Judgment.  Interrogatory 13 stated "Please state the reason why Complainant was reclassified as an "inactive" employee. The answer stated "Robert Lindner, Eastern Mass. Regional Coordinator, had not received a request for assignment from him for a period of thirty (30) days."

-14-

> sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citation omitted). Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity. See *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997); *Hughes v. Derwinski*, 967 F.2d 1169, 1174-75 (7th Cir. 1992).

*Calero-Cerezo v. U.S. Dept. of Justice*, 335 F.3d 6, 25 (2004) (Ponsor, J., sitting by designation).

Here, the plaintiff was assigned to work on March 14, the day after the receipt of the Castagnola letter. If the defendant had intended to take action against the plaintiff, why would it allow him to work a shift the next day? Moreover, the defendant continued to try to place the plaintiff, although to no avail. These actions cut against a finding of causation based solely on temporal proximity.

For all the foregoing reasons and upon the authorities cited, the defendant submits that the plaintiff cannot sustain his burden of proving the third element of a prima facie case of retaliation – that his reclassification to inactive status was causally connected to the Castagnola letter, and summary judgment should enter in defendant's favor.

**CONCLUSION**

For all the foregoing reasons, and upon the authorities cited, the defendant, RELIEF RESOURCES, INC., hereby submits that it is entitled to the entry of summary judgment in its favor.

**Dated:    March 14, 2005**

        **Defendant, RELIEF RESOURCES, INC.,**
            **By It's Attorneys,**

           **/s/ Alan Seewald**
       _____
            **Alan Seewald**
           **BBO # 546790**
   **SEEWALD, JANKOWSKI & SPENCER, P.C.**
      **Five East Pleasant Street**
     **Amherst, Massachusetts 01002**
      **Telephone: (413) 549-0041**
      **Facsimile: (413) 549-3818**
      **Email: AS@SJSAmherst.com**