UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. No. 04-10117-DPW

**KOFI ASIMPI,**
**Plaintiff**

v.

**RELIEF RESOURCES, INC.,**
**Defendant**

**DEFENDANT'S STATEMENT AS TO MATERIAL FACTS NOT IN GENUINE DISPUTE**

1. The Respondent, RELIEF RESOURCES, is a corporation organized under the laws of the Commonwealth of Massachusetts. It is in the business of providing temporary staffing to human services organizations. Its principal place of business is in Hadley, Massachusetts, and it has satellite offices in Somerville and Worcester, Massachusetts and, until recently, in Providence, Rhode Island. Douglas Hammond is and for all relevant times was the President of the corporation. Affidavit of Douglas Hammond ("Hammond Aff") at ¶ 1.

2. At the time of the plaintiff's employment with the defendant, the defendant had 250 – 325 active employees at any given time. As is typical in the temporary staffing industry, the defendant has a high rate of employee turnover. At the time in question, the defendant hired 500 – 750 employees each year. Hammond Aff at ¶ 2.

-1-

3. The plaintiff was hired by Relief Resources on April 2, 1997, as a member of its Field Staff. He was assigned to staff human service agencies that contracted with Relief Resources for temporary staffing. Hammond Aff at ¶ 3.

4. The plaintiff is a native of Ghana, Africa. Relief Resources employs many dozens of native Africans, and utilizes a "word-of-mouth" network among the native African community in the Boston area. In fact, the plaintiff learned of Relief Resources through another native African employee, Esther Tambe. Hammond Aff at ¶ 4.

5. Beginning in May, 1997, the agencies to which the plaintiff was assigned began to complain about his performance. Hammond Aff at ¶ 5.

6. On May 13, 1997, the plaintiff was found sleeping during a day shift at a facility for mentally ill adults known as River Street, and he was given a warning. Hammond Aff at ¶ 6; Deposition of Kofi Asimpi, dated November 9, 2000, ("Dep of Asimpi 2000"), at p. 38, ln 5 through p. 39, ln 18.

7. In May 1997, the plaintiff was alleged to have slept during a day shift at a facility known as the League School. Hammond Aff at ¶ 7; Dep of Asimpi 2000, at p. 54, ln 2 through ln 14. The plaintiff was asked not to be returned to this facility. Hammond Aff at ¶ 7.

8.  On July 23, 1997, the plaintiff was asked not to return to River Street due to alleged poor work performance. Hammond Aff at ¶ 8; Dep of Asimpi 2000, at p. 43, ln 5 through p. 44, ln 15. The plaintiff contacted the program director at River Street several times, and she complained of feeling badgered and asked that the plaintiff not contact her again. Hammond Aff at ¶ 8.

9.  In August 1997, the operator of a facility known as 808 Memorial Drive asked that The plaintiff not return due to a mixup in which the plaintiff arrived when no staff was expected, and the mental health consumers who observed him being escorted out were frightened by the experience. Hammond Aff at ¶ 9; Dep of Asimpi 2000, at p. 49, ln 13 through p. 51, ln 22 and p. 52, ln 22 through p. 53, ln 7.

10. On October 8, 1997, The plaintiff was banned from Clement Street, a facility for mentally ill adults, due to a second medication error. Hammond Aff at ¶ 10; Dep of Asimpi 2000, at p. 60, ln 15 through p. 61, ln 11 and p. 63, ln 6 through p. 64, ln 4.

11. On December 31, 1997, The plaintiff was banned from Norfolk Street, a facility for mentally ill adults operated by CASCAP, because he did not get along with a consumer's dog. The director of Norfolk Street informed Relief Resources that the plaintiff was not to return until it was too late

to contact the plaintiff, and when he arrived and was told that he was not going to be allowed to work the shift he became confrontational with the program director and raised his voice to her. Hammond Aff at ¶ 11; Dep of Asimpi 2000, at p. 64, ln 5 through p. 65, ln 21.

12. After each time the plaintiff was banned from a site, one of the professional staff at Relief Resources counseled The plaintiff as to the appropriate way to conduct himself while on site as a Relief Resources employee. Mr. Hammond and others at Relief Resources spent an inordinate amount of time dealing with these incidents and trying to find a site that was a good match for The plaintiff. Hammond Aff at ¶ 12.

13. In addition, there were several sites to which The plaintiff asked that he not be sent, including the Evergreen Center (unappreciative of his work), Germain Lawrence School (not treated well by director and bad experience in restraining a suicidal runaway), and Marguerite Terrace (too far from public transportation). Hammond Aff at ¶ 13; Dep of Asimpi 2000, at p. 41, ln 6 through p. 43, ln 4); p. 47, ln 9 through p. 49, ln 12, and; p. 67, ln 5 through ln 23.

14. The sites to which The plaintiff could be sent was further limited by the fact that he did not drive and depended on

public transportation. Hammond Aff at ¶ 14; Dep of Asimpi 2000, at 56, ln 16 -19.

15. The agencies with which the defendant contracts use the defendant's services in two different ways. Some use the defendant to staff shifts at a facility on a regular, on-going basis. In essence, those agencies out-source a portion of the staffing needs to the defendant. Other agencies use the defendant to fill in staffing needs on an emergency basis. Those agencies use the defendant's services more intermittently. Hammond Aff at ¶ 15.

16. Given the number of sites from which the plaintiff had been banned, those from which he opted out of being assigned, and the necessity that the site be accessible by public transportation, the available sites that provided regular, on-going employment for the the plaintiff was severely limited. Hammond Aff at ¶ 16.

17. The last existing "on-going" site to which the plaintiff could be assigned on a regular basis was a facility known as Adams Street, a Center for Mental Health facility for mentally ill adults. Hammond Aff at ¶ 17.

18. Unbeknownst to the defendant, one of the consumers living at Adams Street, known as Steve, had allegedly been verbally harassing the plaintiff, saying things such as "you don't change your clothes," "you eat other people's food," and

"you are not intelligent." In addition, Steve blocked the plaintiff's view of the television, disconnected the phone cord while The plaintiff was speaking on the telephone, and, on one occasion, allegedly assaulted the plaintiff. Hammond Aff at ¶ 18;

19. On March 1, 1998, the plaintiff wrote a three-page letter to the House Manager at Adams Street detailing Steve's allegedly harassing conduct. Hammond Aff, at ¶ 19.

20. Other African Americans worked at Adams Street, but there is no evidence that Steve harassed any of them. Dep of Asimpi 2000, at p 81, ln 8 - 22.

21. No one at Relief Resources knew of the alleged racial harassment or of the letter until March 13, 1998, when the director of CMH faxed it to Mr. Hammond, the President of Relief Resources. Hammond Aff at ¶ 19; Dep of Asimpi 2000, p. 85, ln 10 through p. 87, ln 1.

22. Mr. Hammond's first reaction to the letter was that the tone was inappropriately hostile, that the plaintiff had crossed boundaries by drawing other mental health consumers into the conflict, thereby fomenting dispute among the residents, and that the plaintiff's attempt to hold this mentally ill consumer to the same standard of conduct that one would expect of a mentally healthy person was troublesome. Hammond Aff, at ¶ 20.

23. Mr. Hammond spoke with Ms. Harper and the plaintiff about the letter and the issues it raised in the plaintiff's dealings with Steve.  Hammond Aff, at ¶ 21; Dep of Asimpi 2000, p. 88, ln 10 through ln 14.

24. In the conversation between Mr. Hammond and Ms. Harper, Ms. Harper stated that the plaintiff was no longer welcome at Adams Street.  Hammond Aff, at ¶ 22.

25. Adams Street was the last available client that regularly used Relief Resources services to which the plaintiff could be assigned.  Although The plaintiff was assigned to a facility known as High Street on March 14, 1998, High Street was not a regular customer of Relief Resources and it requested services from Relief Resources on an intermittent basis. The plaintiff's scheduled shifts at Adams Street after March 13, 1998 were cancelled because he was banned from the site.  Hammond Aff, at ¶ 23.

26. Although one of the Coordinators, Genie Bush, attempted to place the plaintiff, she was unsuccessful in doing so. Hammond Aff, at ¶ 24.

27. Relief Resources' policy was (and is) to inactivate all field staff who had not been assigned a placement for a period of thirty (30) days.  In accordance with that policy, which was uniformly applied, the plaintiff, along with numerous other field staff, was inactivated by the Human

    Resources Office in April 1998 because the plaintiff had not been assigned a shift for a period of more than thirty (30) days. Hammond Aff, at ¶ 25.

28. The failure to assign the plaintiff after March 14, 1998, was due to the inability to find an ongoing placement at a site that had not banned the plaintiff, as to which the plaintiff had not voluntarily opted out, and that was accessible by public transportation. The failure to assign the plaintiff was not in any way motivated by retaliation for any attempt that the plaintiff may have undertaken to secure his civil rights. Hammond Aff, at ¶ 26.

29. The inactivation of the plaintiff in April 1998 was due to the mechanical application of the inactivation policy and not in any way motivated by retaliation for any attempt that the plaintiff may have undertaken to secure his civil rights. No individualized consideration of the plaintiff's employment status was undertaken, beyond the fact that he had not been assigned to a shift for a period of more than thirty (30) days. Hammond Aff, at ¶ 27.

**Dated:        March 14, 2005**

        **Defendant, RELIEF RESOURCES, INC.,**
            **By It's Attorneys,**


            **/s/ Alan Seewald**
        _____
              **Alan Seewald**
             **BBO # 546790**
   **SEEWALD, JANKOWSKI & SPENCER, P.C.**
       **Five East Pleasant Street**
     **Amherst, Massachusetts 01002**
       **Telephone: (413) 549-0041**
       **Facsimile: (413) 549-3818**
**Email: Alan.Seewald@SeewaldJankowski.com**