UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOFI ASIMPI )<br>    PLAINTIFF )<br> )<br>v )<br> )<br>RELIEF RESOURCES, INC. )<br>    DEFENDANTS ) | CIVIL ACTION NO. 04-10117-DPW |

### PLAINTIFF'S STATEMENT AS TO MATERIAL FACTS IN ISSUE

Now comes the Plaintiff, KOFI ASIMPI, and submits below as its Statement of Materials Facts in Issue in this case, in accordance with Local Rule 56.1 and in opposition to the Defendants' Opposition to Plaintiff's Motion for Summary Judgment.

### INTRODUCTION

As pleaded in the PLAINTIFF'S MOTION FOR PERMISSION TO REFILE HIS MOTION FOR SUMMARY JUDGMENT AND SUPPORTING DOCUMENTS, it was not the Pro Se Plaintiff's deliberate attempt, when filing his Motion for Summary Judgment, to violate or set aside the Local Rule 56.1 requirements. It was a genuine misunderstanding on his part. The Pro Se Plaintiff is therefore appealing to the Court to permit him to re-file his motion for Summary Judgment in accordance with the precepts of Local Rule 56.1.

In this connection, the Plaintiff restates below his Statement of Material Facts in Issue.

### MATERIAL FACTS IN ISSUE

1. The Plaintiff was employed by the Defendants effective April 02, 1997, to the Spring of 1998. The Plaintiff's final day of work for the Defendants was Saturday, March 14, 1998. The Defendants received from Catherine Harper of The Center for Mental Health a faxed copy of letter dated March 1, 1998, written by the Plaintiff and addressed to Ray Castagnola, Manager of the Adam's Street facility operated by The Center for Mental Health. The letter addressed the Plaintiff's concerns about his work environment at The Center for Mental Health. The person about whom the Plaintiff complained in his letter was

       a resident of the Adam's Street facility. The resident's diagnosis was schizophrenic affective disorder.

2. The Plaintiff alleged, and still alleges, that based upon his complaint of being verbally harassed and physically assaulted, based on his race, at The Center for Mental Health, the Defendants retaliated by summarily terminating him in violation of Title VII of the Civil Rights Act of 1964 and of M.G.L. c. 151B. The Defendants denied that the Plaintiff's inactivation was due to the complaint of racial harassment but rather the result of his failure to contact his employer for one month. The Defendants also alleged that based upon the Plaintiff's work performance, it would have been justified to terminate him.

3. The Defendants' argument that the Plaintiff was placed on inactive status because he failed to contact his employer for a month was false. The Plaintiff was in contact with his employer on numerous occasions during the time period of March 1998 to May 1998. The Plaintiff was repeatedly told that someone from the Defendants' office would return his calls. The Defendants in their Position Statement did admit that Plaintiff had "expressed his desire to work as much as possible." This fact remained the same; only the Defendants' acknowledgment of this fact changed.

4. The Defendants relied upon their assertion that "Mr. Asimpi was placed on inactive status due solely and exclusively to his failure to contact his employer for a period of one month." From the Defendants' own telephone records, however, it was clear that the Plaintiff was in constant contact with the Defendants, including the following dates: 3/18/98, 3/19/98, 3/20/98, 3/22/98, 4/2/98, 4/3/98, 5/3/98 and 5/31/98.

5. If the Defendants truly did not terminate the Plaintiff as they claimed and still considered the Plaintiff as an employee, they would have followed their own laid down procedure regarding inactivation by writing to him. The Defendants' *Policies and Procedures* (page 14) states: "Field Staff who do not maintain contact with us and/or who do not accept and/or complete assignments on a consistent basis will be notified by mail of inactivation." That the Defendants failed to do this also proved that their claim that they placed the Plaintiff only on inactive status and did not terminate him was false.

6. While the Defendants claimed that the sole reason for the Plaintiff's inactivation was his failure to maintain contact with the Defendants, the Defendants also saw fit to throw in some character assassination to bolster its position. The fact that the Plaintiff never knew of his alleged "poor work performance" until he read the Defendants' Position Statement would lead one to conclude that it never existed. The fact that the Defendants continued to employ the Plaintiff would indicate that the alleged "poor work performance" was a fabrication. The Plaintiff disputed the allegation that he was banned from "approximately seven agencies".

7. It was obvious that the Defendants fabricated these "poor work performance" allegations in its "Work History" only in preparation for legal action. This document was not included in the Defendants' personnel file and contained only remarks detrimental to the Plaintiff. Thus the Defendants' statement, "Enclosed is a complete copy of the contents of your personnel file, forwarded to you per your request" in response to the Plaintiff's letter requesting a copy of the contents of his personnel file was false. The Defendants made this statement in their letter of July 2, 1998, addressed to the Plaintiff. In addition, while this "Work History" document purported to be a contemporaneous log of the Defendants' hours and locations, it was written in past tense. For example, the very last entry on the "Work History" document reads, "No contact so his file was inactivated." Indeed, the Defendants' president, Douglas Hammond, admitted under oath at a public hearing at the Massachusetts Commission Against Discrimination (MCAD) that the "Work History" document was compiled in preparation for this case.

8. While the Defendants claimed that the Plaintiff was placed on "inactive" status and was not terminated, the result was the same. The Defendants' letter of 5/29/98 referred to the Plaintiff as "a former employee". The Plaintiff was no longer an employee of the Defendants.

9. The Defendants' intention was clear. The Plaintiff complained of being racially harassed. Within a couple of days, the Defendants began refusing to return the Plaintiff's telephone

calls and giving him assignments. Within a month and a half, the Defendants placed the Plaintiff's file on official, "inactive" status.

10. To summarize, there is one and only one main issue of dispute in this case, viz., that the Plaintiff wrote a personal letter to his supervisor and complained about verbal harassment and physical attacks on him at his workplace, believing that the attacks were racially motivated. The Defendants retaliated by almost instantly terminating him. The Plaintiff then filed with the MCAD a complaint of unlawful termination against the Defendants. Instead of admitting this obvious retaliation by termination of the Plaintiff, however, the Defendants adamantly and consistently refuted it, blaming the Plaintiff that it was rather he himself who had failed to contact the Defendants for assignments for a period of one month and so his file was "inactivated". After the Defendants realized they could not sustain their false claim, they fabricated stories upon stories in order to defend themselves, stating that it would have been justified to terminate the Plaintiff because of his "poor work performance". The Plaintiff's complaint of racial harassment at his workplace and the Defendants' retaliation by unlawfully terminating him is the main issue of this case.

Respectfully submitted,

PLAINTIFF

KOFI ASIMPI
213 Kelton Street
Apt. #G-02
Allston, MA 02134-4384
Tel.: 617-566-2524

Dated: the 1st day of April 2005

**Certificate of Service**

I hereby certify that I have served on this day a copy of the aforementioned document upon the parties in this action by mailing postage prepaid, First Class, to the Defendants' counsel, Kristi A. Bodin, Esq.

Kofi Asimpi